In the Matter of Joseph J. Steger, Petitioner, *v.* Francis W. Farrell, as Director of the New York State Civil Defense Commission, Respondent.

Supreme Court, Special Term, Albany County, August 15, 1962.

*Ungerman, Greenberg & Harris* (*Joseph Harris* of counsel), for petitioner. *Louis J. Lefkowitz, Attorney-General* (*William C. Robbins* of counsel), for respondent.

Russell G. Hunt, J. This is an article 78 (Civ. Prac. Act) proceeding seeking the petitioner's reinstatement to the position of civil defense safety representative in the State Civil Defense Commission (L. 1951, ch. 784, as amd.).

It appears that on February 1, 1956, the petitioner, after a noncompetitive examination and qualifications found by the

State Civil Service Commission, was appointed to the position (then entitled " field representative, rescue "), which was, and, is, in the classified service of the State. He held the position until March 24, 1959, when, it is alleged, in violation of his rights as " a person holding a position by permanent appointment or employment in the classified service * * * [and] an exempt volunteer fireman " (Civil Service Law, § 75, subd. 1, par. [b]) and without " incompetency or misconduct shown after a hearing upon stated charges pursuant to this section " (§ 75, subd. 1), he was summarily dismissed by the then Director. The petitioner was ordered to be reinstated to the same position by Mr. Justice HARRY E. SCHIRICK of this court by order dated September 26, 1959, with back salary. It was held that the petitioner as a permanent employee and an exempt fireman was entitled to the protection of section 75 and to " a hearing upon stated charges" before he could be removed. The then Director filed an appeal from the order to the Appellate Division of this court, but, upon a motion being made to dismiss for failure to prosecute, it was withdrawn and an order was entered on March 16, 1961. That determination is conclusive (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304). Petitioner was refused reinstatement, however, until November 30, 1961, when he was appointed to a position, not the same one, but, comparable. The respondent has failed to comply with the order respecting back salary and restoration to the same position. After reappointment, the petitioner was again dismissed, effective March 7, 1962, and again the Director failed to comply with the provisions of section 75 relative to granting a hearing to the petitioner as a permanent appointee and volunteer fireman upon stated charges before removal, and, in violation of the order of March 16, 1961.

It is the contention of respondent, now, that chapter 299 of the Laws of 1961, effective April 3, 1961, which was called into operation by the State Civil Service Commission under the clause that " Positions * * * may, at the election " of that commission be made subject to examination, has repealed, amended or superseded section 75 with respect to employees of the civil defense agencies of the State; that, thereby, and, as to this petitioner, Mr. Justice SCHIRICK's determination has been avoided; and, that the petitioner's failure to pass a qualifying examination called by the Civil Service Commission and which he was required to take, under protest, (as petitioner so claims and not denied) has disqualified him for consideration by the " appointing authority " under chapter 299.

The respondent, upon the argument and in his brief, rests his case on the proposition that, pursuant to chapter 299, the Legislature has annulled the preferential treatment accorded to, and, the substantive rights of, permanent appointees, veterans and volunteer firemen who are and have been employed in that branch of the Executive Department known as the New York State Civil Defense Commission. It is of note, and, some wonderment, that of all the State departments, commissions, boards and agencies which are subject to the Civil Service Law, the commission herein was the only agency selected for the attempt to discriminate against certain State employees and to deprive them of the substantive rights granted by section 75; '' on the subject of equal rights the constitutional rule is that ' No person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances ' '' (*People* v. *Klinck Packing Co.*, 214 N. Y. 121, 129). The punitive results contended for by the respondent were brought about, not by an amendment to, or, repeal of, section 75, but, by an entirely independent and isolated piece of legislation called into operation by the Civil Service Commission and thereupon there was set in motion a series of events in violation of the public policy declared in section 75 in the respects complained of herein; of, the results, '' I am hardly prepared to believe * * * the legislature could have intended so violent an innovation upon the existing law '' (*Graham* v. *Van Wyck*, 14 Barb. 531, 532; see, also, *Winans* v. *Peebles*, 32 N. Y. 423). The expression of legislative will in section 75 is so specific or explicit to the point that there is no room for doubt as to intent and it should take a like expression of legislative will to show a reversal of the policy so declared. The argument of respondent is not one of substance, because the most that can be said of the references to the Civil Service Law is that the Legislature intended to refer to and incorporate the practice and procedure provisions thereof and not to deal with substantive matters.

Upon chapter 299 becoming operative, the incumbents of positions in civil defense agencies, regardless of prior status under the Civil Service Law, became subject to the requirement to take '' qualifying examinations '' for the positions held by them and if, as a result thereof, they should be '' found qualified '' then they '' shall be eligible, in the discretion of the appropriate appointing authority, for designation as '' permanent appointees. The examinations called for would not be competitive examinations and they would not be for appointments or promotions. They would be qualifying examinations, so called, and not deter-

minative, but, would qualify the successful ones to go before the appointing authority for appointment to the position in "the discretion of the appropriate appointing authority". This means that, regardless of all else, appointment would be at the will of the appointing authority and this is opposed to the public policy of this State as declared in the Civil Service Law. In place of the latter, chapter 299 would substitute a patchwork scheme consisting of part Civil Service Law and part expedient and unrelated legislation. The respondent does not offer enlightenment in these respects and no reasonable ground can be sighted for the substitution and the resulting conflict between the two systems. He cannot point to the title of the act, namely, "An act to provide for the continued employment of certain personnel of civil defense agencies of the state and its cities and civil divisions" or to the declaration of "Legislative findings and intent" in section 1 for aid because neither contains anything to show that the purpose of the act is to annul the substantive rights of incumbent permanent appointees, veterans and volunteer firemen.

The general rule regarding conflicts between statutes relating "to the same thing or the same class of things or to the same general subject-matter" (*People ex rel., Doscher* v. *Sisson,* 222 N. Y. 387, 393) requires that chapter 299 and the Civil Service Law should be read together for "they are in *pari materia* and are to be construed as forming an unitary system and as one statute" (id.). Reading chapter 299 and the Civil Service Law together discloses that the former is repugnant to section 75. For the respondent to prevail in his contention that the petitioner's rights were destroyed by chapter 299, then the latter must be construed to have annulled the provisions of section 75, but for such argument to prevail there must be a finding that the Legislature clearly intended to effect that result. Since there was no express repeal of section 75, a repeal by implication must be found and to do so there must be disclosed a legislative intent to effect that result. Chapter 299 is silent in this respect and furnishes not the slightest evidence to support an annulment of the specific and explicit declaration of legislative will and public policy contained in section 75. It is a long standing principle of construction that "repeal by implication is never favored by the courts" (*County of Orange* v. *Ellsworth,* 98 App. Div. 275, 279). Chapter 299, therefore, must be construed so as not to affect or alter the petitioner's rights. Substantive rights cannot be destroyed by implication (*Society of N. Y. Hosp.* v. *Johnson,* 5 N Y 2d 102; *Cimo* v. *State,* 306 N. Y. 143; *City of New York* v. *Maltbie,* 274 N. Y. 90; *People* v. *Dwyer,* 215 N. Y. 46;

*Seyer* v. *Schoen,* 6 A D 2d 177). So, too, where it is asserted that prior existing rights have been taken away by a statute which is not made retroactive (*Dash* v. *Van Kleeck,* 7 Johns. 477; *Matter of Benvenga* v. *La Guardia,* 294 N. Y. 526, 531; *United States* v. *American Sugar Co.,* 202 U. S. 563). An attempted radical departure from the firmly established policy declared in section 75 to be successful, must be expressed in clear and unequivocal language (*Bayonne Textile Corp.* v. *Am. Federation of Silk Workers,* 116 N. J. Eq. 146) and in the absence of such a showing a statute "remains fixed until repealed or amended by the Legislature" (*Schumer* v. *Caplin,* 241 N. Y. 346, 351); the power to repeal a general statute, such as the Civil Service Law, may not be delegated (*Matter of Benvenga* v. *La Guardia, supra,* p. 533). Section 75 is applicable to the position in question and the application is granted; there is no question of fact requiring a trial.